IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Todd Michael Taylor,                        )<br>                                  Plaintiff, )<br>                                                 )<br>v.                                              )<br>                                                 )<br>                                                 )<br>Lieutenant Ashley; Major Neal Urch; )<br>Officer Fleisher; and Dr. Bianco, )<br>*Med Dept.*,                                    )<br>                                                 )<br>                                  Defendants. )<br>_____) | Civil Action No.2:12-cv-2166-JMC-BHH<br><br>**REPORT AND RECOMMENDATION<br>AND ORDER<br>OF MAGISTRATE JUDGE** |

The Plaintiff, Todd Michael Taylor, brought the instant action pursuant to Title 42, United States Code, Section 1983, against Defendants Ashley, Urch, Fleisher, and Bianco. (See Dkt. No. 1.)[1] Dr. Bianco has not yet been served. This matter is currently before the Court upon a Motion for Summary Judgment filed by Defendants Ashley, Urch, and Fleisher. (Dkt. No. 29.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial proceedings in prisoner petitions for relief under 42 U.S.C. § 1983 are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about July 30, 2012. (Dkt. No. 1.) On January 10, 2013, Defendants Ashley, Urch, and Fleisher filed a Motion for Summary Judgment. (Dkt. No. 29.) By order filed January 11, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 30.) Plaintiff filed his Response in Opposition on or about May 14, 2013. (Dkt. No. 40.)

---

[1]At the time Plaintiff filed his Complaint, he was a pretrial detainee at the Spartanburg County Detention Facility and was proceeding *pro se*. (See Dkt. No. 1.) Plaintiff is now represented by counsel, and it appears that Plaintiff is no longer in custody.

**PROCEDURAL FACTS**

Plaintiff, who is no longer incarcerated, alleges claims pursuant to 42 U.S.C. § 1983, for events and conditions that occurred while he was a pretrial detainee at the Spartanburg County Detention Facility ("Detention Facility"). Plaintiff states that he brings this civil action against Ashley, Urch, and Fleisher because they "are not only harassing me over my civil suit, but are also intimidating me, retaliating against me, and taking steps to hinder, deter, or stop altogether my pending civil litigation." (Dkt. No. 1 at 3 of 14.)[2]

Plaintiff alleges that on or about July 12, 2012, he was working on his pending lawsuit when Defendant Fleisher "did an obvious double-take" at the paperwork on Plaintiff's bed. (Dkt. No. 1 at 4 of 14.) According to Plaintiff, he was filling out an inmate grievance "concerning writing materials and law books to Lt. Ashley." (Id.) Plaintiff alleges that, after Fleisher finished with count, Fleisher "doubled back" to Plaintiff's cell and asked Plaintiff for the grievance that Plaintiff was filling out. (Id.) Plaintiff gave it to him, and Fleisher turned it in. (Id.) Plaintiff alleges that, shortly thereafter, Fleisher returned to Plaintiff's cell and stated "something to the effect of 'so you like filing lawsuits, huh?' 'Well, I can make your stay here a living hell.' 'I'm the officer and you're the inmate, so try me.'" (Id.) Plaintiff alleges the next day, he was moved to a different cell. (Id.)

Turning to Defendant Ashley, Plaintiff alleges that he had "been going back and forth with Lieutenant Ashley, who is over the mailroom and property" at the Detention Facility,

---

[2]The other litigation to which Plaintiff refers is Taylor v. Urch et al., No. 2:12-cv-01293-JMC (D.S.C.). The Plaintiff brought that action on or about May 15, 2012. (Dkt. No.1 in 2:12-cv-01293-JMC.) In that litigation, Plaintiff sued Neal Urch, Corporal Tahara, and Dr. Bianco as a result of injuries he sustained when a railing on a bunk broke and Plaintiff fell; Plaintiff also complained about the medical care he received after that fall. See generally Taylor v. Urch et al., No. 2:12-cv-01293-JMC. Judge Childs denied Dr. Bianco's Motion for Summary Judgment. (Dkt. No. 27 in 2:12-cv-01293-JMC.) In a Report and Recommendation signed on July 8, 2013, the undersigned recommended granting the Motion for Summary Judgment filed by Defendants Urch and Tahara. (See Dkt. No. 103 in 2:12-cv-01293-JMC.) The time for objections has not yet run, and the Motion for Summary Judgment filed by Defendants Urch and Tahara remains pending at this time.

"about not receiving and their holding of our mail." (Id.) Plaintiff asserts that he asked Ashley for "specific legal information, including but not limited to, the U.S. Constitution, Fed. Rules [of] Civil Procedure, and various case laws and legal precedents from Supreme Court decisions." (Id. at 5 of 14.) Plaintiff alleges that Defendant Ashley told Plaintiff "that this jail does not have to provide [Plaintiff] with, or make available to [Plaintiff], any legal material or law books." (Id.) Plaintiff further alleges that Defendant Ashley changed the address on a piece of Plaintiff's legal mail addressed to the Clerk of Court for the United States District Court in Greenville, South Carolina. (Id.) Plaintiff alleges that, in doing so, Defendant Ashley "delayed [Plaintiff's] receiving from the courts the information [Plaintiff] requested by about 2-3 weeks." (Id.)

Plaintiff alleges that, a day after speaking with Defendant Ashley about an issue with the mail, all of Plaintiff's property was confiscated, and Plaintiff was "thrown into lock-up." (Id.) Plaintiff states, "Again Lt. Ashley heads up the mail and your personal property here, so my difficulties in getting my property back[] could be directly related to this very fact." (Id. at 6 of 14.)

According to Plaintiff, he asked Defendant Ashley if she could help Plaintiff with "a problem [he] was having with medical." (Id.) Plaintiff alleges that he had "been having nerve issues for months in [his] neck and back that [had] been getting worse with time, and by the time he spoke with Defendant Ashley, Plaintiff's pain was "almost unbearable." (Id.) Plaintiff alleges that he told Defendant Ashley that he was unable to stand at times and that he had even thrown up due to the pain. (Id.) Plaintiff states that he told Defendant Ashley that Officer Brown took Plaintiff to medical on July 18, "after days of complaining," but that all the nurse did was take Plaintiff's vitals, give him one dose of ibuprofen, and put Plaintiff on bed rest. (Id. at 7 of 14.) Plaintiff alleges that, from the time of his fall (on May 1, 2012), he had "been complaining of pain and numbness in [his] fingers," but no x-rays or "further

3

examination has been done." (Id.) Plaintiff states, "As a matter of fact the doctor stopped giving me even tylenol or ibuprofen" even though Plaintiff "submitted dozens of requests begging [the doctor] for help with [the] pain." (Id.) Plaintiff further alleges,

> Now I can't even raise my left arm and the pain has become constant. . . . Now everytime a nurse came by or officer I would ask them to call medical and their general reply was "they are fully aware of you in medical." I was then told by officers that Lt. Ashley was in medical looking into my situation. In the mean time it's been 4 or 5 days of severe pain and complaining with no words of advice or even an aspirin offered to help me cope with pain. This is now my third day of bed rest and nothing at all from medical.

(Id.)

Plaintiff states that on July 21, 2012, Officer Gillespie came and took Plaintiff to "Pod 5 (solitary confinement) for 'medical watch.'" (Id. at 8 of 14.) Plaintiff alleges that he was "locked down on bed rest/medical watch from "Thursday the 19th at 5 AM until Thursday the 24th at around noon when [he] was finally allowed a shower." (Id.) According to Plaintiff, no medical personnel checked on him–and he was given no medication–while he was on "supposed 'medical watch.'" (Id.)

Plaintiff also complains about the loss of his "all of [his] personal property along with most of [his] legal work and material" which was "confiscated" from Plaintiff. (Id.) Plaintiff alleges that "[e]verything from [his] pens" and paper to his canteen, Bible, and legal material was gone. (Id.) Plaintiff states that he "was told by the pod officer at the time that [his] property was just dumped into a garbage bag and not listed/itemized or documented as normal procedure and protocol requires." (Id. at 9 of 14.) Plaintiff contends he has made numerous efforts to get his property returned to no avail. (Id.)

Plaintiff alleges that, as of the time he filed the Complaint, he had been in solitary confinement for ten days even though he had no disciplinary charges. (Id.) Plaintiff asserts that "most people" in solitary confinement "are . . . [t]here for fighting or some other unruly

4

behavior." (Id.) According to Plaintiff, "[t]his is the jail[']s way and the powers that be (Urch and Ashley and Medical) way to retaliate against" Plaintiff. (Id. at 10 of 14.) Plaintiff alleges he "is being punished or retaliated against for filing a lawsuit and/or threats of filing another one." (Id.)

In the "Relief" section of his Complaint, Plaintiff states that he seeks $250,000 for his mental and physical suffering. (Id. at 14 of 14.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, the matter currently before the Court is the Motion for Summary Judgment filed by Defendants Ashley, Fleisher, and Urch (hereinafter "Defendants"). (See Dkt. No. 29.) Defendants contend they are entitled to summary judgment because, *inter alia*, Plaintiff "has not stated a constitutional deprivation sufficient for recovery under 42 U.S.C. § 1983." (Dkt. No. 29-1 at 2 of 8.) Defendants assert that, contrary to Plaintiff's claims that

5

his legal documents were confiscated in retaliation for filing a lawsuit, "Plaintiff's legal documents were simply removed during a cell change and unfortunately misplaced for a few days." (Id.) According to Defendants, Plaintiff "at most makes allegations of negligence concerning his misplaced materials." (Id.)

Along with their Motion for Summary Judgment, Defendants presented the Affidavit of Neal Urch, Director of the Spartanburg County Detention Facility. (See Dkt. No. 29-2.) Defendant Urch states, *inter alia*,

> 4. In his Complaint, Taylor claims that for a period of time while incarcerated at the Spartanburg County Detention Facility ("SCDF"), his court documents were improperly confiscated in retaliation for the filing of an earlier civil action. However, at no time have I or, to my knowledge, any officers or the medical staff of the SCDF done anything to harm Mr. Taylor or retaliate against him for exercising his rights to file this or any lawsuit.
>
> 5. I am attaching a copy of the Memorandum from Sgt. William Brobson to me dated August 4, 2012, which explains in detail why Taylor was moved from one cell to another, and what happened to his property during that cell movement.

(Urch Aff. ¶¶ 4-5.)

The August 4, 2012, memorandum from Sergeant Brobson to Defendant Urch explains why Plaintiff was moved on or about July 21, 2012. (See Dkt. No. 29-2 at 3 of 5.) Brobson's memorandum states:

> 3. The incident that occurred to cause inmate Taylor to be rehoused happened on 20 July 2012. Deputy Murray and Deputy Lanford were the officers assigned to pod 6 for that day. At approximately 0800hrs, Inmate Taylor complained to Deputy Murray that he was in pain from a pinched nerve and he could hardly move or get out of bed. Deputy Murray contacted Medical and advised them of the situation. Deputy Murray observed Inmate Taylor while he was out on his rotation from 0800hrs to 1030hrs. During his rotation Inmate Taylor walked back and forth to his cell several times, which involved going up and down a flight of stairs to get to his cell, and was also walking around on the recreation yard. Inmate Taylor did not appear to be in any kind of pain or discomfort. At approximate 1445hrs, Inmate Taylor again began complaining about severe pain from a pinched nerve. Deputy Murray again

6

> contacted medical and was advised, by medical, to place Inmate Taylor on bed rest until further notice.
>
> 4. On 21 July 2012 Inmate Taylor was observed several times violating the bed rest order from medical. Sgt Nichols was contacted and advised of the situation. Sgt Nichols then made the decision to move Inmate Taylor from Pod 6 to Pod 5 to make it easier to enforce the bed rest order and placed inmate Taylor on a 15 minute medical watch. At approximately 1500, Inmate Taylor was moved from pod 6 cell 32 to Pod 5 cell 1. Cell 1 can be observed from the officer's desk.

(Dkt. No. 29-2 at 3-4 of 5.) Brobson's memorandum further states that Deputy Kirby was instructed to inventory Plaintiff's property and send it over to Pod 5. (Id. at 4.) Brobson indicates that Kirby inventoried Plaintiff's personal property and placed it in Bin #545 in the property room, but Kirby did not inventory Plaintiff's legal paperwork at that time; instead Kirby "placed all of inmate Taylor's legal paperwork in a separate trash bag and gave it to one of the pod 5 officers." (Id.)

According to Brobson's memorandum, officers attempted to return Plaintiff's legal paperwork to him on July 21, 2012, at shift change and did in fact provide Plaintiff with a bag of paperwork. (Id.) Upon receipt of the bag, Plaintiff "immediately creat[ed] a disturbance," claiming that he was missing legal paperwork. (Id.) Brobson's memorandum indicates that the officer's desk in Pod 5, as well as Plaintiff's previous cell, "were checked with negative results." (Id.)

Brobson indicates that on July 30, 2012, Defendant Ashley spoke with Brobson about Plaintiff's property; Brobson states,

> I went to Pod 5, [and] as I got to the officer's desk I looked in the interview room and saw what looked like a property inventory sheet sitting on the floor next to a box containing mesh laundry bags. I picked the paper up and noticed it was the inventory sheet for inmate Taylor's property. I lifted the mesh bags and found the white trash bag with Inmate Taylor's name on it with his property inside. Deputy Kirby was one of the officer's [sic] assigned to the pod. I handed the property to Deputy Kirby with specific instructions to give the property to inmate Taylor and let me know that all items indicated on the property inventory were still in the bag and were returned to inmate Taylor.

7

(Id. at 4-5 of 5.) The memorandum further states,

> On 4 August 2012 I re read Deputy Kirby's statement and realized that their [sic] were two bags of property. One bag with legal paperwork was returned to inmate Taylor that had not been inventoried. Also one bag of personal property that had been inventoried and placed in his proerpty bin in the property room. I entered pod 5 and directed Deputy Murray and deputy Clevenger to search cell #1 to determine exactly what paperwork inmate Taylor may be missing. During the cell search inmate Taylor admitted that he did in fact have all of his legal paperwork in his possession in his cell. The only items that he still claims to be missing are the food items he purchased on the canteen on 21 July 2012.

(Id. at 5 of 5.) According to Brobson's memorandum, "[t]he items that Inmate Taylor now claims to be missing are a pack of plain M&Ms, a pack of Peanut M&Ms, a milky way bar, a nutty butter bar, and a honey bun." (Id.)

Defendants seek summary judgment "because he has not stated any injury that resulted from Defendants['] actions in inadvertently misplacing his legal materials for approximately ten days." (Dkt. No. 29-1 at 5 of 8.)

Unfortunately, Defendants' motion only addresses one of Plaintiff's several claims. (See generally Dkt. No. 29.) The undersigned will nevertheless attempt to address all of Plaintiff's claims.

**A. Due Process Claim Regarding Lost Property**

Defendants assert that all of Plaintiff's property was returned to Plaintiff. (See Dkt. No. 29-2 at 5.) Plaintiff admits the lost canteen items were returned to him. (See Dkt. No. 40 at 17 of 23.) Plaintiff steadfastly maintains, however, that not all of his property was returned to him. (See Dkt. No. 40 at 16-17 of 23.)[3]

---

[3] The undersigned notes that Plaintiff's Response in Opposition was notarized. (See Dkt. No. 40 at 22 of 23.)

8

To the extent that Plaintiff seeks to bring a § 1983 action simply for his lost property–be that canteen or legal materials–that claim necessarily fails. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." However, the Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. Daniels v. Williams, 474 U.S. 327 (1986); Pink v. Lester, 52 F.3d 73, 75 (4th Cir.1995). Thus, to the extent Plaintiff's claim for lost property sounds in negligence, that claim fails.

Furthermore, an intentional deprivation of property by a state employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. Hudson v. Palmer, 468 U.S. 517, 536 (1984). In South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization. See McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir.1986) (citing S.C. Code Ann. § 15-69-10 et seq.). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." Id. (citing Parratt v. Taylor, 451 U.S. 527 (1981)). As such, any due process claim for deprivation of property fails.

## B. Access to the Courts Claim

Although not addressed in Defendants' Motion for Summary Judgment, Plaintiff attempts to bring an access to the courts claim. Plaintiff alleges, *inter alia*, that he asked Defendant Ashley for specific legal documents, such as the Federal Rules of Civil Procedure, and her response was that the Detention Facility "does not have to provide [Plaintiff] with, or make available to [Plaintiff], any legal material or law books." (Dkt. No. 1

9

at 5 of 14.)[4] Plaintiff also alleged that Defendant Ashley changed an address on a piece of Plaintiff's legal mail, such that Defendant Ashley "delayed [Plaintiff's] receiving from the courts the information [Plaintiff] requested by about 2-3 weeks." (Id.) Finally, Plaintiff complains that some of his legal work was "confiscated." (Id. at 8 of 14.)

As the Supreme Court stated in Bounds v. Smith, 430 U.S. 817, 828 (1977), "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." However, in order to succeed on any access-to-the-courts claim, a prisoner is required to show actual prejudice to his litigation. Lewis v. Casey, 518 U.S. 343, 349 (1996); see also Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). A prisoner can satisfy this requirement by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. In addition, in asserting a claim for denial of access to the courts, "a prisoner cannot rely on conclusory allegations. Specificity is necessary . . . ." Cochran, 73 F.3d at 1317 (citing White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989)).

The undersigned recommends granting summary judgment to Defendants on the access to the courts claim because it is clear that Plaintiff is not able to establish prejudice to his litigation. As noted above, the "other litigation" related to the access to the courts claim is Taylor v. Urch et al., No. 2:12-cv-01293-JMC (D.S.C.). Despite Plaintiff's allegations of interference, the only allegation of harm related to Defendant Ashley's changing the address was that Plaintiff was "delayed" in receiving information from the court. (See Dkt. No. 1 at 5 of 14.) From a review of the docket, it appears Plaintiff has been successful in

---

[4]Defendants assert in their Motion for Summary Judgment that Plaintiff pursues his case against Ashley "solely on allegations of supervisory liability." (Dkt. No. 29-1 at 5 of 8.) Of course, as highlighted by the allegations listed herein, this assertion is incorrect. Plaintiff has alleged several actions taken personally by Defendant Ashley. (See generally Dkt. No. 1.)

litigating his claims; Defendant Bianco's Motion for Summary Judgment in that case was denied. (See Dkt. No. 27 in 2:12-cv-01293-JMC.) As of the date of the instant Report and Recommendation, all of Plaintiff's claims in that case remain pending. In addition, Plaintiff now has counsel in that case and in the case *sub judice*. Plaintiff's access to the courts claim against Ashley therefore fails.[5] Accordingly, the undersigned recommends granting summary judgment to Defendants on Plaintiff's access to the courts claim.

**C. Claim against Defendant Fleisher**

Plaintiff alleges that Defendant Fleisher threatened Plaintiff as a result of Plaintiff's filing lawsuits. According to Plaintiff, Fleisher stated "something to the effect of 'so you like filing lawsuits, huh?' 'Well, I can make your stay here a living hell.' 'I'm the officer and you're the inmate, so try me.'" (Dkt. No. 1 at 4 of 14.) These are the only allegations Plaintiff makes against Defendant Fleisher.

It is well settled that verbal abuse of inmates by guards, without more, fails to state a claim under § 1983. McDowell v. Jones, 990 F.2d 433, 434 (8th Cir.1993)("Verbal threats and name calling are usually not actionable under § 1983."); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir.1992); Lamb v. Hutto, 467 F.Supp. 562, 568 (E.D. Va.1979).

However, in Hudspeth v. Figgins, 584 F.2d 1345 (4th Cir. 1978), the Fourth Circuit addressed a prisoner's claim that the defendants, "institutional officers, interfered with his

---

[5]Plaintiff did not allege that Defendant Ashley confiscated his legal material. Nor did Plaintiff allege that Defendant Urch or Defendant Fleisher confiscated his legal material. In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Because Plaintiff does not contend these Defendants confiscated Plaintiff's legal materials, any claim for denial of access to the courts against these Defendants fails, as they were not personally involved. Furthermore, Urch's position as administrator of the Detention Facility does not, standing alone, subject him to liability for the alleged confiscation, as the doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978).

11

access to the courts, placed his life in danger, and subjected him to cruel and unusual punishment." <u>Hudspeth</u>, 584 F.2d at 1346. Plaintiff in <u>Hudspeth</u> alleged as follows:

> I was standing on the front steps of field unit # 30, Fairfax, Virginia, when penal system officer, Donald Figgins, related the following to me:
> "The courts are not going to rule in your favor. Before they will do that, they will pay five thousand dollars to an officer to shoot you and make it look like an accident."
> He then emphasized his point by putting forth his left hand and slapping it with his right hand saying:
> "Yes, five thousand in the hand and one morning you'll get orders to report to work on a gun gang."
> Then he patted his side where a firearm is normally worn and turned and walked away.

<u>Hudspeth</u>, 584 F.2d at 1347. The Fourth Circuit noted that the plaintiff's hearing was impaired and that "[a]llegedly because of that, [the plaintiff] was assigned to an unguarded work detail within the correctional institution." <u>Id</u>. The plaintiff alleged, however, that as predicted by Figgins, "Sergeant Nesselrodt ordered him transferred to a road gang under the supervision of two armed guards." <u>Id</u>. The plaintiff asserted that "he feared for his life as a result of an 'accident' while working with the road gang, that the threat and the transfer were intended to limit his right of access to the courts, to endanger his life, and to subject him to mental anguish." <u>Id</u>.

> The Fourth Circuit reversed the district court's dismissal for failure to state a claim:
>
> A threat of physical harm to a prisoner if he persists in his pursuit of judicial relief is as impermissible as a more direct means of restricting the right of access to the courts. Nor is it necessary that the prisoner succumb entirely or even partially to the threat. It is enough that the threat was intended to impose a limitation upon the prisoner's right of access to the court and was reasonably calculated to have that effect. See <u>Lingo v. Boone</u>, 402 F.Supp. 768, 775 (N.D.Cal.1975).
>
> With the liberal construction to which it is entitled, we think the complaint states a claim against Figgins for his threat of physical harm if Hudspeth pursued his judicial remedies and, in light of that earlier threat, against Nesselrodt for transferring him to the road gang under the supervision of armed guards, if it can be proven that Nesselrodt knew of Figgins' threat.

Hudspeth, 584 F.2d at 1348. The court acknowledged that "there would be no claim if Figgins intended his remarks as a joke, and Hudspeth understood them not to have been serious." Id.

Certainly remarks such as those Plaintiff alleges were made by Fleisher are ill-advised on the part of any prison guard. Plaintiff has not, however, alleged any action of Fleisher's as retaliation for filing a lawsuit.[6] Plaintiff has not alleged any action of Fleisher other than Fleisher's above-described statement and Fleisher's action of properly submitting one of Plaintiff's grievances. (See Dkt. No. 1 at 4 of 14.) Instead, Plaintiff alleged as follows: "I've also been forced to suffer physically as what I believe to be a collaboration of the jail heads and medical because I have a lawsuit on both." (Dkt. No. 1 at 11 of 14.) On these allegations, Plaintiff's claim against Defendant Fleisher fails. See Goodman v. Smith, 58 Fed. App'x 36, 38 (4th Cir. 2003) ("The plaintiff must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than a de minimis inconvenience." (citing Am. Civil Liberties Union of Md., Inc. v. Wicomico Cnty., Md., 999 F.2d 780, 785-86 & n.6 (4th Cir. 1993)). The undersigned therefore recommends granting summary judgment to Defendant Fleisher.

**D. Retaliation Claims against Defendants Urch and Ashley**

Plaintiff alleges that he was placed in solitary confinement as retaliation for his previously filing a lawsuit. (Dkt. No. 1 at 9-10 of 14.) According to Plaintiff, he was held in solitary confinement even though he had no disciplinary charges, and "most people [on solitary confinement] are . . . [there] for fighting or some other unruly behavior." (Id. at 9.) Although not crystal clear, it also appears that Plaintiff alleges his legal documents and

---

[6] Fleisher is not a defendant in Taylor v. Urch et al., No. 2:12-cv-01293-JMC (D.S.C.).

13

personal property were "confiscated" as retaliation for Plaintiff's other lawsuit. (Dkt. No. 1 at 8 of 14.) Plaintiff states, "I've . . . been forced to suffer physically as what I believe to be a collaboration of the jail heads and medical because I have a lawsuit on both. This was and is an obvious excuse to have me locked up to suffer in solitary confinement with nothing for my pain in retaliation to my pending civil suit." (Dkt. No. 1 at 11 of 14.) Plaintiff explains his reason for suing Defendants Ashley and Urch:

> I am naming Lieutenant Ashley who is directly responsible for her part in this. She changed my address on my legal mail, denied me legal material and law references or any access to it, and is now denying me my personal property which happens to include my legal work and vital paperwork important in my proving my case. . . . I am naming director Urch for he is the "power that be" who dictates and puts into place the policies and procedures here at the jail and for his actions in the formentioned [sic] claim. He is aware of what is going on and is allowing it.

(Dkt. No. 1 at 12 of 14.)

Retaliation against an inmate for the exercise of his right to access the courts states a cognizable claim. Hudspeth v. Figgins, 584 F.2d at 1347–48. Such retaliation by an official is actionable even if the act would have been proper if taken for different reasons. Wicomico Cnty., 999 F.2d at 785. In order to state a retaliation claim, the plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). The plaintiff must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than de minimis inconvenience. Wicomico Cnty., 999 F.2d at 785–86 & n.6. The prisoner need not succumb entirely or even partially to the threat; it is sufficient that the retaliation was intended to limit the prisoner's right of access to the court "and was reasonably calculated to have that effect." Hudspeth, 584 F.2d at 1348. However,

14

the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74–75.

The undersigned recommends granting summary judgment to Defendant Ashley on Plaintiff's retaliation claim. Plaintiff did not allege that Defendant Ashley placed him in solitary confinement or gave the order for him to be placed in solitary confinement. (See generally Compl.) Nor did Plaintiff allege that Defendant Ashley confiscated his personal property or legal materials. Plaintiff did allege that Ashley "heads up the mail and . . . personal property [at the Detention Facility], so [Plaintiff's] difficulties in getting [his] property back[] could be directly related to this very fact." (Dkt. No. 1 at 6; see also Dkt. No. 40 at 19 of 23.) However, in a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). The fact that Defendant Ashley was head of the mail room and personal property does not, in and of itself, subject Defendant Ashley to liability for another's constitutional violations. See Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977).

The analysis with respect to Defendant Urch is less clear. Plaintiff alleges that he named Defendant Urch because Urch "is the 'power that be' who dictates and puts into place the policies and procedures" at the Detention Facility. (Dkt. No. 1 at 12 of 14.) Reading Plaintiff's allegations liberally, Plaintiff appears to allege that Defendant Urch ordered Plaintiff be placed in solitary confinement, and that Urch ordered this as retaliation for Plaintiff's previous lawsuit. (Id. at 8, 12 of 14.)

Of course, Urch's position as the Director of the Detention Facility does not, in and of itself, subject him to liability pursuant to § 1983 for the actions of the facility's employees. See Vinnedge v. Gibbs, 550 F.2d at 927-29. The evidence presented by Defendants in their Motion for Summary Judgment indicates that Sergeant Nichols made the decision to move Plaintiff from Pod 6 to Pod 5. (See Dkt. No. 29-2 at 4 of 5.) Plaintiff himself alleged that

Officer Gillespie is the one that actually took Plaintiff to Pod 5. (See Dkt. No. 1 at 8 of 14.) In his Response in Opposition, Plaintiff refers to the "procedures that are suppose[d] to be enforced by Major Urch." (Dkt. No. 40 at 20 of 23.) A defendant's failure to follow policy does not, in itself, amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). Certainly there are circumstances in which supervisory officials may be held liable for constitutional injuries inflicted by their subordinates. Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). Plaintiff, however, has not made allegations against Urch sufficient to subject Urch to supervisory liability. The undersigned therefore recommends granting summary judgment to Urch.

**E. Medical Claims**

For the reasons discussed above, the undersigned recommends granting summary judgment to Defendants Urch, Ashley, and Fleisher. Plaintiff, however, has also alleged claims against a Defendant Bianco, who has not yet been served in the instant case. (See Dkt. No. 1; see also Dkt. No. 13.)

> Rule 4(m) of the Federal Rules of Civil Procedure provides, in relevant part,
>
> **(m) Time Limit for Service**. If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

FED. R. CIV. P. 4(m). The instant case was filed on July 30, 2012. (Dkt. No. 1.) The 120-day period in Rule 4(m) has passed, and Dr. Bianco has not been served.

16

Plaintiff, who is now represented by counsel, shall either accomplish service of Dr. Bianco or dismiss Dr. Bianco from the instant case. Plaintiff has an action pending against Dr. Bianco in <u>Taylor v. Urch et al.</u>, No. 2:12-cv-01293-JMC (D.S.C.), and it is not clear to the undersigned whether the medical claims in the instant case are really the same deliberate indifference claims against Dr. Bianco set forth in <u>Taylor v. Urch et al.</u>, No. 2:12-cv-01293-JMC (D.S.C.). Plaintiff is hereby ORDERED, within fifteen (15) days of the date of the instant Report and Recommendation, to file a status report indicating Plaintiff's intentions concerning the instant case against Dr. Bianco.

## **CONCLUSION**

Wherefore, it is ORDERED that, within fifteen (15) days of the instant Report and Recommendation, Plaintiff shall file a status report concerning Plaintiff's intentions with respect to the instant action against Defendant Bianco.

IT IS SO ORDERED.

It is RECOMMENDED that the Motion for Summary Judgment filed by Defendants Ashley, Fleisher, and Urch (Dkt. No. 29) be GRANTED.

IT IS SO RECOMMENDED.

                                                  s/Bruce Howe Hendricks
                                                  United States Magistrate Judge

July 22, 2013
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).